

SOUTHERN DISTRICT OF MISSISSIPPI
FILED

MAY 23 2014

ARTHUR JOHNSTON
_____ DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

THE MERCHANTS COMPANY, d/b/a
MERCHANTS FOODSERVICE,                                                        **PLAINTIFF**

V.                                                        CAUSE NO.: 2:14cv 71KS-MTP

                                                        **JURY TRIAL REQUESTED**

U.S. FOODS, INC.                                                        **DEFENDANT**

---

## COMPLAINT

Plaintiff, THE MERCHANTS COMPANY, D/B/A Merchants Foodservice ("Merchants"), through its attorneys, for its Complaint against Defendant, U.S. FOODS, INC. ("U.S. Foods"), hereby states as follows:

### INTRODUCTION

1.     This is an action to recover damages for violations of the Antitrust laws of the United States pursuant to Section 2 of the Sherman Act (15 U.S.C. § 2). The jurisdiction of this Court is premised on federal question and diversity jurisdiction. This is also an action claiming violations of unfair competition, tortious interference, and abuse of process under Mississippi state law.

2.     Merchants is forced to bring this suit to stop U.S. Foods' systematic and coordinated scheme to injure competition and consumers, as well as to harm Merchants' business relations in retaliation for Merchants' recent refusal to agree to U.S. Foods' solicitation to purchase its company. U.S. Foods' unlawful conduct and abuse of process has led to litigation in Chicago, Illinois against Merchants and certain individual employees designed to intimidate

398808

current Merchants employees and dissuade other individuals from seeking employment at Merchants.  Even more troubling, U.S. Foods has targeted Merchants and damaged Merchants by pressuring its customers not to do business with Merchants and not to buy products from Merchants' sales force.

3.      Plaintiff Merchants Foodservice is a Mississippi corporation, with its principal place of business in Hattiesburg, Mississippi.  Merchants is a direct competitor of U.S. Foods.

4.      Defendant U.S. Foods is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Rosemont, Illinois.  U.S. Foods has Divisions across the country, and the Division closest in geography to Merchants is the Montgomery Division.  U.S. Foods has a registered agent for service of process in Mississippi, C T Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232.

5.      This Court has original jurisdiction over this action under 28 U.S.C. §§ 1331 and 1332.

6.      This Court has personal jurisdiction over Defendant, and venue is proper in this District under 28 U.S.C. § 1391(a) because Defendant committed and continues to commit anticompetitive, monopolistic, and tortious acts in and/or related to this State.  U.S. Foods regularly conducts business in Mississippi and Defendant's anticompetitive conduct has harmed Merchants in Mississippi.  The ultimate effect and harm of the tortious activity undertaken by U.S. Foods is aimed and calculated to cause injury to Merchants in Mississippi.

7.      Venue is also proper in this District because relevant witnesses, documents, and electronic files that bear directly on the issues presented in this action are housed in Mississippi.

398808

## U.S. FOODS' MONOPOLY POWER AND ITS MEGA-MERGER WITH SYSCO WILL ENABLE THE REIGNING GIANT TO STOMP OUT COMPETITION

8.      U.S. Foods is one of the nation's top broadline foodservice distributors, offering more than 350,000 national brand products and its own private label items, ranging from meats and produce to frozen foods.   U.S. Foods provides food and related products to more than 250,000 customers, including independent restaurants, government operations, healthcare and hospitality entities, educational institutions and multi-unit restaurant companies.

9.      Nationally, U.S. Foods employs approximately 25,000 people in more than 60 locations.

10.     The relevant product market for U.S. Foods' anticompetitive activity in this case is the broadline foodservice distribution market.  The relevant geographic market is the Alabama and Florida panhandle market where U.S. Foods' Montgomery Division competes with Merchants' Clanton, AL distribution center.  Broadline firms provide one-stop distribution from a single truck shipment and they are increasingly servicing chain restaurants and other multi-unit institutions and operations.  Broadline foodservice distributors control about three-fifths of the foodservice market, with the remainder of the foodservice market supplied by specialty product distributors and other firms.

11.     Upon information and belief, U.S. Foods' competitors are solely the broadline foodservice distributors and Merchants is competing for the same customers and using the same suppliers.

3

398808

12.     The Hale Group and the International Foodservice Manufacturers estimate the broadline foodservice market at $185 billion nationally in 2013.

13.     Upon information and belief, Sysco Corporation ("Sysco") is the largest broadline foodservice distributor in the United States, with revenues of $44 billion in 2012.  U.S. Foods is second to Sysco, with $21 billion in revenue.

14.     In December 2013, Sysco and U.S. Foods announced that Sysco would buy U.S. Foods in a merger valued at $8.2 billion, enabling the new company to become the largest U.S. food supplier and the only one with a nationwide market reach.

15.     The merger of the two companies will create a monopoly for nationwide market share, with the closest competitors being smaller broadline food distributors, such as Performance Food Group, with revenues of $12 billion; Reinhart Foodservice, with revenues of $6 billion; and Gordon Food Service Inc., with revenues of $5 billion, according to news reports. Firms smaller than the tenth largest foodservice distributor have less than one half of one percent of total national sales.

16.     It is reported that after the merger, Sysco (with U.S. Foods) would have $50 billion more in sales than its largest rival.  Sysco would be more than five times larger than the second largest firm, nearly seven times larger than the number three firm and twelve times larger than the fourth largest firm.  Sysco and U.S. Foods' substantial command of the market will also be present in the Alabama and panhandle of Florida market, where smaller market participants, such as Merchants, will be unable to provide sufficient competition after the merger.

17.     The Federal Trade Commission ("FTC") is examining the proposed merger, and several state attorneys general, including the Attorney General in Florida, are part of a group reviewing the deal.  The non-profit consumer advocacy organization, Foods & Water Watch, has

398808

raised concerns with the FTC that the merger substantially increases Sysco's market power, allowing it to unilaterally impose "small but significant" price hikes on foodservice operations with few other options.

18.    Merchants is a family-owned, regional broadline foodservice distributor located in Hattiesburg, Mississippi serving eight states, including Alabama, Georgia, Florida, Mississippi, North and South Carolina, Arkansas, and Tennessee.    Merchants' annual revenue is approximately $550 million.

19.    In contrast to U.S. Foods' 350,000 products, Merchants sells approximately 12,000 products, ranging from frozen entrees, fresh produce and meats, to cooking and cleaning supplies.  Whereas U.S. Foods employs 25,000 workers, Merchants has a total of 500 employees.

20.    Merchants has four distribution centers, which are located in Jackson, MS; Clanton, AL; Newberry, SC; and Tifton, Georgia.

21.    Upon information and belief, U.S. Foods controls a majority of the market share in the Alabama and panhandle of Florida market in which it competes with Merchants, and U.S. Foods is either the top supplier or the secondary supplier to almost every customer in that market.

22.    Upon information and belief, USF and Sysco control 70% of the market in the Alabama and panhandle of Florida market.

23.    There are significant barriers to entry into the relevant market because, among other things, there are significant capital expenditures necessary for the infrastructure to run a broadline foodservice company, as well as a diverse product mix required to support the diverse customer segments in this market.  In addition, the broadline foodservice distribution market is highly seasonal and the months in Spring and Summer is when the business is at its highest.

Other barriers to entry include a low density population that is scattered across a large geographic region. Finally, access to capital after the recession is very tight and it takes a significant amount of capital to start and run a broadline foodservice distributor.

24. While preparing for its merger with Sysco, U.S. Foods also sought to take Merchants out of the market by trying to force a sale and, when the sale did not occur, using predatory tactics to drive Merchants out of the broadline food distribution market in the Alabama and panhandle of Florida region.

## U.S. FOODS' BID TO PURCHASE MERCHANTS AND ITS RETALIATORY MOTIVES AFTER MERCHANTS REFUSED TO SELL

25. Anticompetitive effects have been occurring with U.S. Foods and Sysco using their scale to buy up rivals, including an attempt to acquire Merchants, to leverage their market power and try to force smaller companies out of business.

26. On or about November 16, 2011, U.S. Foods first approached Merchants to explore U.S. Foods purchasing Merchants. Merchants President/CEO, Andrew Mercier, met with U.S. Foods executives Bryan Torcivia and Keith Knight in New Orleans, at which time U.S. Foods stated that it was interested in buying Merchants in order to avoid having to open or buy a warehouse in Baton Rouge, LA or Jackson, MS to service its business in the area. The message conveyed to Merchants was that the broadline foodservice distribution market is changing and smaller, regional independent foodservice distributors will get pushed to the margins. Merchants was not interested in selling its business to U.S. Foods.

27. Then again, on or about May 1, 2013, Mr. Mercier met with Mr. Torcivia and another U.S. Foods executive, David Schreibman, to continue discussions on U.S. Foods' interest in purchasing Merchants.

6

398808

28.     On September 9, 2013, U.S. Foods' CEO, John Lederer, insisted on meeting with Mr. Mercier again to discuss U.S. Foods' interest in purchasing Merchants.  U.S. Foods made clear to Mr. Mercier that U.S. Foods wanted to buy Merchants and implied that if Merchants did not sell to U.S. Foods, U.S. Foods may have other plans that would harm Merchants in the marketplace.  Unfortunately for Merchants, U.S. Foods' recent conduct demonstrates that it has made good on its threat.

### MERCHANTS' HIRING OF U.S. FOODS' EMPLOYEES AND U.S. FOODS' RETALIATORY AND ANTICOMPETITIVE CONDUCT AIMED TO PREVENT MERCHANTS FROM GAINING MARKET SHARE LAWFULLY

29.     Since U.S. Foods announced the merger with Sysco to its employees in December 2013, Merchants has received numerous applications for employment from U.S. Foods employees.  Upon information and belief, other broadline foodservice distributors have also received numerous applications for employment from U.S. Foods in recent months.  Employees have reported that are fearful of their job security at U.S. Foods following the merger announcement based on U.S. Foods' statement that the merger will generate significant "cost synergies" of at least $600 million in three to four years.

30.     In January 2014, Merchants hired Woody Cheatham as its Regional President. Mr. Cheatham had previously worked for U.S. Foods at it Atlanta Division and after separating employment with U.S. Foods for nine months, Mr. Cheatham joined Merchants.

31.     On April 10, 2014, Merchants hired Eddy Williams as District Sales Manager. Mr. Williams previously worked for U.S. Foods as a Sales Manager.

32.     On April 11, 2014, Merchants hired Brett Goller as a District Sales Representative.  Mr. Goller previously worked for U.S. Foods as a Territory Manager.

7

33.     On April 11, 2014, Merchants hired Howard Dunaway as a District Sales Representative.  Mr. Dunaway previously worked for U.S. Foods as a Territory Manager.

34.     Williams, Goller and Dunaway are signatories to Non-Solicitation / Non-Disclosure Agreement ("NSNDA") with U.S. Foods.

35.     The NSNDAs are governed by Delaware law, and require these individuals, all Florida residents, be subject to personal jurisdiction and submit to legal action in the Northern District of Illinois to their significant harm, expense and inconvenience.

36.     The NSNDAs purport to restrict Williams, Goller and Dunaway from, among other things, soliciting, marketing, servicing, contacting, selling or attempting to sell to customers to whom they sold products or services while at U.S. Foods, or to whom U.S. Foods sold products or services, and with whom they had contact during the 18 month-period prior to their resignation.

37.     On April 16, 2014, U.S. Foods' outside counsel sent letters to Merchants, Williams, Goller, and Dunaway requesting assurances that Williams, Goller, and Dunaway would abide by their contractual obligations to their former employer.

38.     On April 22, 2014, counsel for Merchants and Williams, Goller, and Dunaway responded to U.S. Foods' letters and stated that Merchants would take all reasonable steps to ensure that neither it nor Williams, Goller, and Dunaway would violate the NSNDAs.  Counsel for Merchants further advised U.S. Foods that aside from one single account, it had failed to identify any facts or evidence in support of its suspicion that Williams, Goller, and Dunaway were violating their NSNDAs.  Nonetheless, Merchants advised U.S. Foods that it instructed Williams, Goller, and Dunaway not to bring to Merchants, or attempt in any way to use, any U.S. Foods confidential, proprietary or trade secret information that they may have had access to

398808

while they were employed by U.S. Foods.  Counsel for Merchants asked U.S. Foods' counsel to notify him if U.S. Foods' investigation uncovered any evidence that supported its belief that Williams, Goller, and Dunaway were in possession of any U.S. Foods confidential, proprietary or trade secret information.  Counsel for Merchants also asked U.S. Foods for a list of accounts that it believes the employees are restricted from soliciting, so that Merchants could ensure that Williams, Goller, and Dunaway complied with their post-employment obligations.

39.     Counsel for U.S. Foods never responded to counsel for Merchants' letter. Further, U.S. Foods neither provided a list of customers so that Merchants could ensure that Williams, Goller, and Dunaway were not violating their NSNDAs, nor did it provide any facts or evidence to support its belief that Merchants was engaged in wrongful conduct.

40.     Notwithstanding Merchants' counsel's invitation to U.S. Foods' counsel to raise concerns to Merchants "promptly" so that Merchants could address U.S. Foods' concerns, U.S. Foods instead chose to file a lawsuit on May 14, 2014, accompanied by a Motion for Temporary Restraining Order and Preliminary Injunction, against Merchants, Williams, Goller and Dunaway in federal court in Illinois alleging breach of the NSNDAs and other tortious conduct. U.S. Foods' lawsuit against Merchants is designed to intimidate Merchants because U.S. Foods knows or should know that the federal court in Illinois does not have personal jurisdiction over Merchants.  In addition, U.S. Foods has no good faith basis to allege any wrongdoing on the part of Merchants in its hiring and employment of Williams, Goller and Dunaway.  Instead, U.S. Foods' goal through the filing of the lawsuit is to force Merchants to spend significant time, and energy, and expense in defending an unnecessary action, as well as harm its business relationships with its employees, prospective employees, customers and prospective customers.

398808

41.     Merchants has been harmed by U.S. Foods' litigation in Illinois and the harm is ongoing.   U.S. Foods' litigation has also caused damage to Williams, Goller, and Dunaway in their ability to compete and enter the market for the distribution and sale of food and food-related products.   Williams, Goller, and Dunaway will also be forced to travel thousands of miles to Chicago, Illinois to participate in the defense of their case, despite not working in Illinois or having any contact whatsoever with Illinois.

42.     It appears that U.S. Foods' anticompetitive conduct includes a comprehensive corporate scheme to file aggressive litigation in federal court against regional and local competitors during the busy seasonal season when business is at its peak, seeking to enforce arguably unenforceable U.S. Foods' Non-Solicitation and Non-Disclosure Agreements.   In the past few months, U.S. Foods has filed 6 lawsuits against broadline foodservice distributors in Mississippi, New Jersey and Illinois, and, upon information and belief, continues to threaten other distributors with legal action.   Upon information and belief, U.S. Foods' specific intent of its litigation strategy is not to resolve the cases on their merits but to intimidate and threaten its rivals who have fewer resources and revenue, in order to force a resolution that encompasses broader non-solicitation of customer restrictions than what is permissible by contract or state law.

43.     U.S. Foods' anticompetitive conduct with respect to its litigation against other broadline foodservice distributors, as well as its planned merger with Sysco, would quell the competition throughout the relevant market for all rivals.

44.     On or about April or May, 2014, Brett Goller visited Pensacola Moose Lodge to solicit it for business on behalf of Merchants.   Pensacola Moose Lodge is not an account to whom Goller sold products to on behalf of U.S. Foods, nor did Goller have any contact on behalf

398808

of U.S. Foods in connection with a sale to Pensacola Moose Lodge. Accordingly, Goller is not restricted in his employment with Merchants from soliciting or servicing or selling to Pensacola Moose Lodge. Pensacola Moose Lodge is a fraternal organization, and Goller is a member of the Pensacola Moose Lodge and has a relationship with it that was separate and apart from his former employment with U.S. Foods. After Goller solicited and obtained business from Pensacola Moose Lodge, Pam, the representative of the lodge responsible for ordering products, told Goller that it would not do business with Goller or Merchants because of pressure it was facing from U.S. Foods. Because of U.S. Foods pressure, Merchants has lost Pensacola Moose Lodge as an account, causing harm to Merchants and to Goller's business expectations.

45. On or about April or May, 2014, Goller visited Sam's Seafood to solicit it for business on behalf of Merchants. Sam's Seafood is not an account to whom Goller sold products to on behalf of U.S. Foods, and Goller did not have any contact on behalf of U.S. Foods in connection with a sale to Sam's Seafood. Accordingly, Goller is not restricted in his employment with Merchants from soliciting or servicing or selling to Sam's Seafood. Goller is familiar with Sam's Seafood, and had previously sold to that customer on behalf of an employer prior to working for U.S. Foods. Sam's Seafood is also an existing customer of Merchants. Shortly after making a sale to Sam's Seafood, Goller observed U.S. Foods Vice President of Sales and a Territory Manager visit with Sam's Seafood. Since that visit from U.S. Foods, Sam's Seafood has declined to make an order with Merchants and told Goller he is not sure whether he will order from Merchants in the future.

46. U.S. Foods' conduct is ratified and encouraged by the senior leaders within the company and its Montgomery Division. For example, upon information and belief, on or about May 2, 2014, Quenten Wentworth, the U.S. Foods-Montgomery Division's President, made a

11

visual presentation to the entire Division sales force making false and defamatory statements that, among other things, Merchants was a small company that had too much debt, was going bankrupt, and was looking to sell its business.  Mr. Wentworth also implied to the sales force that Merchants could not take a market share in Alabama.  Mr. Wentworth had no justification for making these statements and knew, or should have known, they were false when he made them.

47.     Upon information and belief, current U.S. Foods employees who formerly worked for Merchants are using Merchants' confidential employee lists and other Merchants' proprietary information that they have unlawfully retained to solicit current Merchants employees to leave Merchants for U.S. Foods.

48.     Upon information and belief, Pat Carpenter, the Transportation Manager of U.S. Foods-Montgomery Division, has made anticompetitive statements that it is going to raid and seek to hire all of Merchants' drivers on behalf of U.S. Foods.

49.     As a result of U.S. Foods' conduct, competition in the distribution and sale of food and food-service products has been suppressed and eliminated.  The acts of U.S. Foods constitute unfair methods of competition and unfair and deceptive acts and practices, resulting in harm to Merchants and its employees.

**COUNT I**
**USE OF ANTICOMPETITIVE TACTICS IN VIOLATION OF SECTION 2 OF THE SHERMAN ACT**

50.     Plaintiff adopts and incorporates by reference allegations contained in Paragraphs 1 through 49 above.

398808

51.    U.S. Foods has engaged in conduct in interstate commerce amounting to unlawful monopolization, an attempt to monopolize, and/or a conspiracy to monopolize in violation of Section 2 of the Sherman Act (15 U.S.C. § 2).

52.    U.S. Foods possesses a monopoly share in the Alabama and panhandle of Florida broadline foodservice distribution market, in which Merchants competes with U.S. Foods. Specifically, upon information and belief, U.S. Foods is either the primary or secondary supplier of food and food-related products to the available customers in the relevant market to the exclusion of Merchants.

53.    Upon information and belief, U.S. Foods possesses more than 70% of the relevant market share.

54.    U.S. Foods has a specific intent to acquire and/or maintain that monopoly power as is evidenced by the unfair and predatory actions it has taken against Merchants in the relevant market.

55.    U.S. Foods acquired a monopoly and is maintaining and increasing that monopoly power willfully by engaging in predatory or exclusionary conduct, including, but not limited to, threatening to harm Merchants if it did not sell its company to U.S. Foods, pressuring existing and potential customers in the Alabama and panhandle of Florida market not to do business with Merchants, engaging in litigation against Merchants in Illinois as well as other rivals, and intimidating prospective employees of Merchants not to apply for or accept an offer of employment with Merchants out of fear of being sued by U.S. Foods.

56.    As a direct and proximate result of these actions, which create a barrier to competition by Merchants, and the current market share of U.S. Foods, which will significantly

13

398808

increase upon its merger with Sysco, there is a dangerous probability of U.S. Foods successfully achieving a monopoly in this market.

57.     Upon information and belief, U.S. Foods is conspiring with Sysco to monopolize the market share and exclude lawful competition from Merchants.

58.     U.S. Foods and Sysco have already agreed to a merger of the two entities and, as a result, will obtain a larger share of the relevant market and about a one third share of the national market, substantially impacting interstate commerce.

59.     As a direct and proximate result of these acts and the aforementioned actions taken by U.S. Foods against Merchants during this period prior to the merger, Merchants has suffered and continues to suffer harm and is entitled to recover compensatory and punitive damages, attorneys' fees and costs from U.S. Foods.

## COUNT II
## UNFAIR COMPETITION

60.     Plaintiff adopts and incorporates by reference allegations contained in Paragraphs 1 through 59 above.

61.     U.S. Foods undertook the foregoing acts to hold an unfair competitive advantage over Merchants.

62.     The acts were willful, wanton, malicious, and grossly negligent.

63.     U.S. Foods willfully undertook the foregoing acts with malice, with knowledge of and disregard for Merchants' rights, and with the intention of causing harm to Merchants' and benefiting themselves.

64.     Merchants is informed and believes that U.S. Foods is unfairly competing in the marketplace.

14

398808

65.    As a direct and proximate result of these actions, Merchants has suffered and continues to suffer harm and is entitled to recover compensatory and punitive damages, attorneys' fees and costs from U.S. Foods.

## COUNT III
## TORTIOUS INTERFERENCE

66.    Plaintiff adopts and incorporates by reference allegations contained in Paragraphs 1 through 65 above.

67.    Merchants has existing contractual and/or business relationships with its customers that derives value to Merchants.  These relationships constitute property interests entitled to protection from unjustified interference by Merchants' competitors, including U.S. Foods.

68.    U.S. Foods, intentionally, willfully, and without justification, has interfered and continues to interfere with Merchants contractual and business relationships with its customers by pressuring customers to discontinue their business with Merchants, as well as by engaging in other unlawful actions described above.

69.    U.S. Foods, intentionally, willfully, and without justification, has interfered and continues to interfere with Merchants relationships with its employees who were formerly employed by U.S. Foods and with prospective applicants by creating an atmosphere where individuals are fearful that U.S. Foods will pursue frivolous legal action against them in Illinois if they work for Merchants, as well as by engaging in other unlawful actions described above.

70.    U.S. Foods has engaged in the foregoing conduct for the unlawful purpose of causing damage and loss, without privilege or justification.

15

398808

71.     As a direct and proximate result of these actions, Merchants has suffered and continues to suffer harm and is entitled to recover compensatory and punitive damages, attorneys' fees and costs from U.S. Foods.

## COUNT IV
## ABUSE OF PROCESS

72.     Plaintiff adopts and incorporates by reference allegations contained in Paragraphs 1 through 71 above.

73.     U.S. Foods, intentionally and for an improper purpose, has used the legal process to cause damage to Merchants, including but not limited to filing a frivolous lawsuit against Merchants in Illinois knowing that the Court does not have personal jurisdiction over Merchants in that forum, demanding that Merchants participate in formal court-approved discovery in that case, and serving subpoenas on Merchants for the production of documents and the appearance of a corporate designee for deposition.

74.     U.S. Foods' lawsuit against Merchants is one of six (6) pending lawsuits against small, independent food distributors in Illinois and Mississippi that is part of a systematic corporate plan to stifle competition from food distributors in the months preceding U.S. Foods' merger with Sysco.   Upon information and belief, U.S. Foods has sent dozens of letters threatening to use the legal process to other food distributors around the country in an attempt to scare and coerce them into pre-litigation monetary settlement through a protocol designed to stifle competition and the lawful solicitation of its customers and employees by its competitors.

75.     U.S. Foods' use of the legal process has been done with the unlawful purpose of causing damage and loss, without privilege or justification.

16

398808

76.     As a direct and proximate result of these actions, Merchants has suffered and continues to suffer harm and is entitled to recover compensatory and punitive damages, attorneys' fees and costs from U.S. Foods.

## DEMAND FOR JURY

Merchants demands a jury trial and has tendered the appropriate fee.

## PRAYER FOR RELIEF

WHEREFORE, Merchants seeks judgment in its favor and an Order granting the following relief:

1.     That Defendant be enjoined from engaging in predatory, exclusionary or anticompetitive conduct, including but not limited to:

    a.   Refrain from filing legal actions against Merchants in forums where Merchants does not to do business and has no personal jurisdiction in those forums;

    b.   Refrain from making false and defamatory statements about Merchants;

    c.   Refrain from any use or disclosure of Merchants' confidential, proprietary, or trade secret information to solicit Merchants' employees or customers; and

    d.   Refrain from spoliation of evidence.

2.     That Defendant account for all of the misuses of Merchants' information and property and other unlawful acts;

3.     That Defendant be ordered to disgorge all improper benefits, profits, and/or gains;

4.     That Merchants be awarded compensatory damages to be proven at trial;

5.     That Defendant be ordered to pay three times Plaintiff's actual damages plus attorney fees as provided by federal antitrust law.

398808

6.      That Merchants be awarded exemplary or punitive damages in an amount to be proven at trial;

7.      That Merchants be awarded its costs and attorneys' fees incurred in bringing this action; and

8.      That the Court grant such further relief as it deems just.

RESPECTFULLY SUBMITTED,

BRYAN NELSON P.A.

David M. Ott, MSB #3948
Kris A. Powell, MSB #101458
P. O. Box 18109
Hattiesburg, MS  39404-8109
Tel:  (601) 261-4100 office
Fax:  (601) 261-4106


Kara M. Maciel
*Of Counsel*

EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, NW, Suite 700
Washington, DC 20037
Tel: 202.861.0900
kmaciel@ebglaw.com


Attorneys for Plaintiff
MERCHANT FOODSERVICE

398808